UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| PATRICK A. ZOELLNER, M.D., | Case No. 1:11-cv–00382-EJL |
| Plaintiff, | **MEMORANDUM DECISION AND ORDER** |
| v. | |
| ST. LUKE'S REGIONAL MEDICAL CENTER, LTD., | |
| Defendant. | |

## INTRODUCTION

The Court has before it defendant's Motion to Dismiss Plaintiff's Federal and State Antitrust Claims (Dkt. No. 5).  Having reviewed the briefing submitted by the parties, the Court has determined oral argument is unnecessary.  For the reasons explained below, the Court will grant the motion to dismiss.

## BACKGROUND

Dr. Patrick Zoellner is an anesthesiologist who practiced at St. Luke's Regional Medical Center from 2003 to 2010.  Dr. Zoellner was not a hospital employee, however. He was employed by Anesthesia Associates of Boise.  Anesthesia Associates is St.

Luke's exclusive provider of anesthesiology services.

Dr. Zoellner was forced to resign from Anesthesia Associates in the fall of 2010 when four principals told him that the company "had to go in a different direction . . . ." *Id.* ¶ 43. According to Dr. Zoellner, St. Luke's coerced Anesthesia Associates into terminating him by threatening not to renew the company's exclusive contract unless Dr. Zoellner was gone.

Dr. Zoellner says St. Luke's wanted to get rid of him because he insisted on safe scheduling practices for surgeries, whereas St. Luke's surgeons insist on scheduling surgeries at times that are not in the patients' best interests. As an example, Dr. Zoellner alleges that St. Luke's "often allows a neurosurgeon to perform surgeries from 7:00 a.m. to 11:00 p.m. on Monday and Tuesday, because he wants to take off Thursday through Sunday to go to Sun Valley." *Compl.*, Dkt. 1, ¶ 32. More generally, Dr. Zoellner alleges that St. Luke's business culture "has been 'to keep the surgeons happy – whatever the surgeons want.'" *Id.* ¶ 31.

In any event, Dr. Zoellner felt he had no choice but to accept the forced resignation because he was "[r]easonably concerned that he would be blackballed, receive no good references to be able to find other positions, receive no referrals for surgical work, and [be] faced with an immediate end of income." *Id.* ¶ 44. Dr. Zoellner accepted a job in Denver, but with "significantly reduced income." *Id.* ¶ 47. His wife was "also forced to abandon her medical practice in Boise." *Id.*

In August 2011, Dr. Zoellner sued St. Luke's, alleging federal and state antitrust

violations, intentional interference with contract, and intentional interference with prospective economic advantage.

## THE STANDARD

A motion to dismiss based on Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 731 (9th Cir. 2001). A complaint generally must satisfy "only the minimal notice pleading requirements" of Federal Rule of Civil Procedure 8(a)(2) to avoid a 12(b)(6) dismissal. *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003). Rule 8(a)(2), "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests . . . .'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

In considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "all well-pleaded allegations of material fact are taken as true and construed in a light most favorable to the non-moving party." *Wyler Summit Partnership v. Turner Broadcast Sys., Inc.*, 135 F.3d 658, 661 (9th Cir.1998) (citation omitted). The court does not necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations in plaintiff's complaint. *See Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir.1994). "However, conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996); *see also*

*Twombly*, 550 U.S. 544.  Finally, the Court may not consider any material beyond the pleadings in ruling on a motion to dismiss under Rule 12(b)(6).  *See Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994).

## ANALYSIS

Dr. Zoellner alleges a variety of antitrust theories.  He first asserts that St. Luke's conspired with Anesthesia Associates to "monopolize the provision of hospital surgical services and the provision of anesthesiology services within a significant portion of the Boise market . . . ."  *Compl.,* Dkt. 1, ¶ 51.  In addition, he alleges that St. Luke's conduct constitutes: (1) a conspiracy to foreclose him from the market of anesthesiology providers "through an unreasonable vertical restraint on trade restricting competition and diminishing the quality of hospital surgical services"; (2) "an illegal boycott"; and (3) "an illegal tying arrangement."  *Compl.*, Dkt. 1, ¶¶ 56, 66, 67.  St. Luke's contends that none of these theories is viable because Dr. Zoellner failed to adequately plead an antitrust injury.  The Court agrees.

Dr. Zoellner's federal antitrust claims are based on § 1 of the Sherman Act.  This section declares agreements "in restraint of trade or commerce" illegal.  15 U.S.C. § 1 ("Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations is declared to be illegal.").  Unlike the federal government, which can sue anyone who violates the antitrust laws, private plaintiffs must "meet the requirements for 'antitrust standing' . . . and to acquire 'antitrust *standing*,' a plaintiff must adequately allege and eventually prove

antitrust *injury*.'" *Glen Holly Entm't, Inc. v. Tektronix Inc.*, 352 F.3d 367, 371 (9th Cir. 2003) (citation omitted). *See generally* 15 U.S.C. § 15 (Section 4 of the Clayton Act; permitting antitrust actions by private plaintiffs).

An antitrust injury, in turn, is defined as one where the defendants' "unlawful conduct" injures the plaintiff in a way "the antitrust laws were designed to prevent." *Id.*[1] Additionally, "the party alleging the injury must be either a consumer of the alleged violator's goods and services or a competitor of the alleged violator in the restrained market.'" *Id.* (citing *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977)).

In *Atlantic Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328 (1990), the Supreme Court explained that "[t]he antitrust injury requirement ... ensures that a plaintiff can recover only if the loss stems from a *competition- reducing* aspect or effect of the defendant's behavior." *Id.* at 344 (emphasis added). Similarly, in *Les Shockley Racing, Inc. v. National Hot Rod Association,* 884 F.2d 504 (9th Cir. 1989), Ninth Circuit explained that antitrust "claimants must plead and prove *a reduction of competition* in the market in general and not a mere injury to their own positions as competitors in the market." *Id.* at 508 (emphasis added).

---

[1]In *Glen Holly*, the Ninth Circuit articulates this part of the "antitrust injury" definition as having four elements: "(1) unlawful conduct, (2) causing an injury to the plaintiff, (3) that flows from that which makes the conduct unlawful, and (4) that is of the type the antitrust laws were intended to prevent." 325 F.3d at 372 (quoting *Am. Ad Mgmt, Inc. v. Gen. Telephone Co.*, 190 F.3d 1051, 1055 (9th Cir. 1999)).

Dr. Zoellner has failed to allege facts that plausibly show reduced competition in the market for anesthesiology services based on his forced resignation from Anesthesia Associates.  An antitrust claim cannot survive a motion to dismiss if it fails to allege facts supporting an economic theory of harm to competition that is "plausible in light of economic principles."  *William O. Gilley Enters., Inc. v. Atl. Richfield Co.*, 588 F.3d 659, 662 (9th Cir. 2009).

First, from the consumer's standpoint (*i.e.,* patients who need surgery performed under anesthesia), Dr. Zoellner has not alleged facts showing that his forced resignation reduced competition in the marketplace.  Rather, as alleged in the complaint, patients who need anesthesiology services have the same two choices they had before the resignation – services performed by an exclusive provider at St. Alphonsus Regional Medical Center, or services performed by Anesthesia Associates at St. Luke's.

Second, from the anesthesiologists' point of view, Dr. Zoellner fails to explain how his elimination from the marketplace injured competition generally.[2]  In other words, Dr. Zoellner does not plausibly allege that St. Luke's gained an anti-competitive advantage in the marketplace by forcing his resignation.  As the Ninth Circuit has explained, "an allegation that 'competition has been injured rather than merely competitors,' is essential to any § 1 Sherman Act Antitrust Act Claim.'"  *Columbia River*

---

[2]Dr. Zoellner points out that after his departure, another anesthesiologist left St. Luke's because of its unsafe practices.  But the mere fact that another doctor decided not to practice at St. Luke's because he disagrees with the hospital's surgery-scheduling policies does not establish that the hospital engaged in anticompetitive behavior.

*People's Util. Dist. v. Portland Gen. Elec.*, 217 F.3d 1187, 1190 (9th Cir. 2000), quoting

*Rutman Wine Co. v. E.&.J. Gallo Winery*, 829 F.3d 729, 734-35 (9th Cir. 1987).  After

all, the antitrust laws were enacted for "the protection of competition, not

competitors . . . ." *Brown Shoe Co.. v. United States*, 370 U.S. 294, 320 (1962).

Plaintiff contends that he fleshed out his antitrust injury allegations with sufficient

factual detail, but the facts relate to damages he personally suffered and do not allege any

broader harm to competition generally.  Specifically, Dr. Zoellner alleges that he had to

accept a lower-paying job and his wife was forced to abandon her medical practice.

Dr. Zoellner also argues that he can make out an antitrust injury by alleging that

consumers are now forced to endure a lower-quality product – namely, surgeries

scheduled at the whim of surgeons, rather than according to safe practices.  He quotes a

New York federal district court opinion – *New York Medscan, LLC v. NYU School of

Medicine*, 430 F. Supp. 2d 140 (S.D.N.Y. 2006) – in support of his argument.  In *New

York Medscan,* the court observed that "a decline in quality is among the injuries that the

antitrust laws were designed to prevent . . . . Indeed, in the context of the provision of

health care services for cancer patients, the quality of care is likely to be at least as

important as the price."  *Id.* at 148 (*citing, inter alia, Capital Imaging Assoc. P.C. v.

Mohawk Valley Med. Assocs., Inc.*, 996 F. 2d 537, 546-47 (2d Cir. 1993)).

*New York Medscan*, however, is distinguishable, namely because the plaintiffs

alleged facts supporting reduced competition; they did not rely solely on reduced quality.

*See id.* (court observed that "plaintiffs allege that defendants' conduct has caused:

reduced competition in the provision of PET/CT services; reduced competition in the price of these services; . . . ."). *Id.* at 147. Further, the court observed that the alleged reduction in quality was an *effect* of reduced competition. *Id.* ("Moreover, defendants omit quality from their list of potential consequences of reduced competition.").

This observation is, of course, in keeping with the Supreme Court and Ninth Circuit precedents discussed above, which generally hold that plaintiffs must plead and prove *reduced competition* to make out an antitrust injury. The Court therefore rejects Dr. Zoellner's argument that he can show antitrust injury by pointing to a decline in quality, with nothing more. Moreover, Dr. Zoellner did not plausibly allege a *market-wide* decline in the quality of services after his forced resignation.

For all these reasons, the Court will dismiss Dr. Zoellner's antitrust claims, though it will allow Dr. Zoellner the opportunity to amend these claims. Any amended complaint must allege facts supporting an economic theory of harm to competition that is "'plausible' in light of basic economic principles." *William O. Gilley Enters., Inc. v. Atl. Richfield Co.*, 588 F.3d 659, 662 (9th Cir. 2009) (citation omitted).

**ORDER**

Plaintiff's Motion to Dismiss (Dkt. 5) Plaintiff's Federal and State Antitrust

Claims is GRANTED.   Plaintiff shall file any amended complaint within 30 days of this

Order.


DATED:  **June 19, 2012**

_____
Honorable Edward J. Lodge
U. S. District Judge