UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| PATRICK A. ZOELLNER, M.D., <br><br> Plaintiff, <br> v. <br><br> ST. LUKE'S REGIONAL MEDICAL CENTER, LTD., <br><br> Defendant. | Case No. 1:11-cv–00382-EJL <br><br> **MEMORANDUM DECISION AND ORDER** |

# INTRODUCTION

The Court has before it Defendant St. Luke's Regional Medical Center, Ltd.'s ("St. Luke's") Motion to Dismiss Plaintiff's Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) (Dkt. No. 29) and Plaintiff Patrick A. Zoellner, M.D.'s (Dr. Zoellner") Motion to Strike Portion of Defendant's Motion to Dismiss Plaintiff's Amended Complaint (Dkt. 35). Having fully reviewed the record, the Court finds that the facts and legal arguments are adequately presented in the briefs and record. Accordingly, in the interest of avoiding further delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, this matter shall be decided on the record

before this Court without oral argument.

## BACKGROUND

Dr. Patrick Zoellner is an anesthesiologist who practiced at St. Luke's Regional Medical Center from 2003 to 2010. Dr. Zoellner was not a hospital employee, however. He was employed by Anesthesia Associates of Boise. Anesthesia Associates is St. Luke's exclusive provider of anesthesiology services.

Dr. Zoellner was forced to resign from Anesthesia Associates in the fall of 2010 when four principals told him that the company "had to go in a different direction . . . ." *Amended Complaint and Jury Demand*, Dkt. 26, ¶ 43. According to Dr. Zoellner, St. Luke's coerced Anesthesia Associates into terminating him by threatening not to renew the company's exclusive contract unless Dr. Zoellner was gone.

Dr. Zoellner says St. Luke's wanted to get rid of him because he insisted on safe scheduling practices for surgeries, whereas St. Luke's surgeons insist on scheduling surgeries at times that are not in the patients' best interests. As an example, Dr. Zoellner alleges that St. Luke's "often allows a neurosurgeon to perform surgeries from 7:00 a.m. to 11:00 p.m. on Monday and Tuesday, because he wants to take off Thursday through Sunday to go to Sun Valley." *Am. Compl.*, ¶ 32. More generally, Dr. Zoellner alleges that St. Luke's business culture "has been 'to keep the surgeons happy – whatever the surgeons want.'" *Id.* ¶ 31.

MEMORANDUM DECISION AND ORDER - 2

In any event, Dr. Zoellner felt he had no choice but to accept the forced resignation because he was "[r]easonably concerned that he would be blackballed, receive no good references to be able to find other positions, receive no referrals for surgical work, and [be] faced with an immediate end of income." *Id.* ¶ 44. Dr. Zoellner accepted a job in Denver, but with "significantly reduced income." *Id.* ¶ 47. His wife was "also forced to abandon her medical practice in Boise." *Id.*

In August 2011, Dr. Zoellner sued St. Luke's, alleging federal and state antitrust violations, intentional interference with contract, and intentional interference with prospective economic advantage. On June 19, 2012, this Court granted St. Luke's motion to dismiss the federal and state antitrust claims, but granted Dr. Zoellner leave to file an amended complaint to see if Plaintiff could allege facts supporting an economic theory of harm to competition that is "'plausible' in light of basic economic principles." *William O. Gilley Enters., Inc. v. Atl. Richfield Co.*, 588 F.3d 659, 662 (9th Cir. 2009) (citations omitted). *See* Memorandum Decision and Order, Dkt. 25, p. 8.

On July 10, 2012, Dr. Zoellner filed his Amended Complaint adding paragraphs 49 -55. In these paragraphs, Dr. Zoellner alleges St. Luke's conduct was economically driven to avoid losing market share to St. Alphonsus and that St. Luke's alleged catering to surgeons' schedules was profit driven. Dr. Zoellner alleges his termination was due to his opposition to the practice of scheduling of surgeries and had a "chilling effect" on the remaining members of Anesthesia Associates from opposing allegedly unsafe scheduling

practices. Dr. Zoellner alleges St. Luke's conduct led to a market-wide decline in the quality of surgical care provided by St. Luke's and increased costs when St. Luke's constructed another surgical room at one of its facilities.

St. Luke's filed its second motion to dismiss alleging the Amended Complaint still does not state a claim for relief under the federal and state antitrust statutes and also moves for dismissal of the state law tort claims of Intentional Interference with Contract and Intentional Interference with Prospective Economic Advantage.

## MOTION TO STRIKE

Dr. Zoellner moves to strike the portion of the second motion to dismiss that relates to the state tort claims arguing St. Luke's failure to raise these arguments in its first motion to dismiss, prevents it from raising the arguments now. St. Luke's argues that under Fed. R. Civ. P. 12(b)(6) the defense of failure to state a claim upon which relief may be granted cannot be waived, so its motion to dismiss the tort claims is timely. Alternatively, if not timely, St. Luke's argues there is no prejudice to Plaintiff and the Court should exercise its discretion to resolve the legal questions presented on the tort claims.

The Court finds technically that St. Luke's should have raised its Rule 12(b)(6) arguments in its first motion to dismiss. However, since the defense was not waived by not including it in the first motion pursuant to Fed. R. Civ. P. 12(h)(2), the Court finds the better course of action is to consider the merits of the motion as the motion to dismiss the

tort claims does not appear to have been filed be for purposes of delay and there does not appear to be any prejudice to Plaintiff since he was allowed to file a brief in response to the motion to dismiss the tort claims.  *See Fed. Express Corp. v. United States Postal Serv.*, 40 F. Supp. 2d 943, 948-49) (W.D. Tenn 1999); *SCO Grp., Inc. v. Novell, Inc.*, 377 F. Supp. 2d 1145, 1151 (D. Utah 2005).  The motion to strike is denied.

## MOTION TO DISMISS

### 1.  STANDARD OF REVIEW

A motion to dismiss based on Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim."  *Navarro v. Block*, 250 F.3d 729, 731 (9th Cir. 2001).  A complaint generally must satisfy "only the minimal notice pleading requirements" of Federal Rule of Civil Procedure 8(a)(2) to avoid a 12(b)(6) dismissal.  *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003).  Rule 8(a)(2), "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests . . . .'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

In considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "all well-pleaded allegations of material fact are taken as true and construed in a light most favorable to the non-moving party." *Wyler Summit Partnership v. Turner*

*Broadcast Sys., Inc.*, 135 F.3d 658, 661 (9th Cir.1998) (citation omitted).  The court does not necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations in plaintiff's complaint.  *See Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir.1994).  "However, conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim."  *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996); *see also Twombly*, 550 U.S. 544.  Finally, the Court may not consider any material beyond the pleadings in ruling on a motion to dismiss under Rule 12(b)(6).  *See Branch v. Tunnell*, 4 F.3d 449, 453 (9th Cir. 1994).

## 2. ANALYSIS

### A.  Federal and State Antitrust Claims

Dr. Zoellner alleges a variety of antitrust theories.  He first asserts that St. Luke's conspired with Anesthesia Associates to "monopolize the provision of hospital surgical services and the provision of anesthesiology services within a significant portion of the Boise market . . . ."  *Am. Compl.,* Dkt. 26, ¶ 58.  In addition, he alleges that St. Luke's conduct constitutes: (1) a conspiracy with Anesthesia Associates to foreclose him from the market of anesthesiology providers "through an unreasonable vertical restraint on trade restricting competition and diminishing the quality of hospital surgical services"; (2) "an illegal boycott"; and (3) "an illegal tying arrangement."  *Id.*, ¶¶ 63, 73, 74.

St. Luke's contends that none of these theories is viable because Dr. Zoellner failed to adequately plead an antitrust injury. After reviewing the Amended Complaint, the Court agrees Dr. Zoellner has failed to plead a plausible antitrust claim.

Dr. Zoellner's federal antitrust claims are based on § 1 of the Sherman Act. This section declares agreements "in restraint of trade or commerce" illegal. 15 U.S.C. § 1 ("Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations is declared to be illegal."). Unlike the federal government, which can sue anyone who violates the antitrust laws, private plaintiffs must "meet the requirements for 'antitrust standing' . . . and to acquire 'antitrust *standing*,' a plaintiff must adequately allege and eventually prove antitrust *injury*.'" *Glen Holly Entm't, Inc. v. Tektronix Inc.*, 352 F.3d 367, 371 (9th Cir. 2003) (citation omitted). *See generally* 15 U.S.C. § 15 (Section 4 of the Clayton Act; permitting antitrust actions by private plaintiffs). Plaintiff's state antitrust claims are based on the Idaho Competition Act which prohibits unreasonable restraints of Idaho commerce. Idaho Code § 48-104. Federal case law is considered to establish unreasonable restraints of Idaho commerce. *See generally, Pines Grazing Assoc., Inc. v. Flying Joseph Ranch, LLC*, 265 P. 3d 1136 (Idaho 2011).

An antitrust injury, in turn, is defined as one where the defendants' "unlawful conduct" injures the plaintiff in a way "the antitrust laws were designed to prevent." *Id.*[1]

---

[1] In *Glen Holly*, the Ninth Circuit articulates this part of the "antitrust injury" definition as having four elements: "(1) unlawful conduct, (2) causing an injury to the plaintiff, (3) that flows

**MEMORANDUM DECISION AND ORDER - 7**

Additionally, "the party alleging the injury must be either a consumer of the alleged violator's goods and services or a competitor of the alleged violator in the restrained market.'" *Id.* (citing *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977)).

In *Atlantic Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328 (1990), the Supreme Court explained that "[t]he antitrust injury requirement ... ensures that a plaintiff can recover only if the loss stems from a *competition- reducing* aspect or effect of the defendant's behavior." *Id.* at 344 (emphasis added). Similarly, in *Les Shockley Racing, Inc. v. National Hot Rod Association,* 884 F.2d 504 (9th Cir. 1989), Ninth Circuit explained that antitrust "claimants must plead and prove *a reduction of competition* in the market in general and not a mere injury to their own positions as competitors in the market." *Id.* at 508 (emphasis added).

The Court finds Dr. Zoellner has again failed to allege facts that plausibly show reduced competition in the market for anesthesiology services based on his alleged forced resignation from Anesthesia Associates. An antitrust claim cannot survive a motion to dismiss if it fails to allege facts supporting an economic theory of harm to competition that is "plausible in light of economic principles." *William O. Gilley Enters., Inc. v. Atl. Richfield Co.*, 588 F.3d 659, 662 (9th Cir. 2009).

---

from that which makes the conduct unlawful, and (4) that is of the type the antitrust laws were intended to prevent." 325 F.3d at 372 (quoting *Am. Ad Mgmt, Inc. v. Gen. Telephone Co.*, 190 F.3d 1051, 1055 (9th Cir. 1999)).

To the extent Dr. Zoellner is rearguing his earlier arguments on his antitrust claim, the Court rejects those arguments and adopts by reference it earlier analysis on the antitrust claim set forth in its Memorandum Decision and Order, Dkt. 25.

To the extent Dr. Zoellner is claiming his new allegations satisfy his burden to present a plausible economic theory of an antitrust violation, the Court respectfully disagrees. Patients choose surgeons, they do not choose who their anesthesiologist is for their surgery. Instead, the anesthesiologist group contracted to provide services to St. Luke's provides anesthesiologists for the scheduled surgeries at the hospital. Dr. Zoellner's theory that his resignation from Anesthesia Associates resulted in a "reduction of competition" in the market in general is not supported by his allegations in his Amended Complaint. Dr. Zoellner has failed in his obligation allege plausible facts that would establish that his termination led to reduced competition for surgical services. The outcome might be different if Dr. Zoellner was a surgeon being sought out by patients, instead of one of many anesthesiologists being assigned to a surgery scheduled by another doctor. In *Fuentes v. South Hills Cardiology*, 946 F.2d 196 (3rd Cir. 1991), the doctor was able to allege his termination impacted patients seeking his services. Here, patients "indirectly" seek the services of an anesthesiologist when their surgeon schedules a surgery. Dr. Zoellner's allegations do not establish any reduction in the competition for surgical services in the market area due to his forced resignation.

Additionally, if St. Luke's was trying to increase market share, the allegation of

Dr. Zoellner's resignation leading to increased prices to consumers for surgical services is inconsistent with basic economic principles. One would expect a strategy of a reduction in prices to capture market share, not an alleged increase in prices. Nor does Dr. Zoellner allege that St. Luke's prices did in fact increase to patients due to the addition of surgical space. The fact a medical facility expands, does not establish that there was a reduction in the competition. Basic economic principles would lead to the conclusion that expansion of facilities would increase, not decrease, competition for medical services.

Mere speculation without correlation to the alleged antitrust harm is insufficient to establish the economic plausibility necessary to proceed with the antitrust claim in this case. Dr. Zoellner's argument that due to his forced resignation there was a reduction in surgical competition generally is not supported by the allegations in his Amended Complaint.

Dr. Zoellner cites the Court to two articles to support his economic theory that consolidation of medical services is increasing costs. Dkt. 36-1 and 36-2. These articles, while interesting, are not properly before the Court for its consideration on a motion to dismiss which centers on the Court's evaluation of the Amended Complaint and whether it states a claim upon which relief can be granted. The articles are not factually applicable to the issues in this case as they do not relate to the Idaho market at issue in this case. Furthermore, the Court finds the articles do not specifically support Plaintiff's allegation that his termination (as one anesthesiologist in a group) caused a reduction in

competition.

As to Dr. Zoellner's renewed boycott argument, the Court again finds this theory of recovery has not been adequately pled by Dr. Zoellner. Dr. Zoellner does not allege that he attempted to find work with the other major competitor to St. Luke's or anywhere else in the Boise area. Nor does the Amended Complaint establish that St. Luke's took any action to prevent Dr. Zoellner from practicing elsewhere in the Boise area market. Plaintiff's cite to *Pinhas v. Summit Health, Ltd.*, 894 F.2d 1024 (9th Cir. 1989) is unpersuasive. In *Pinhas*, the Ninth Circuit confirmed that a plaintiff must prove more than an injury to himself, he must prove an injury to the competition in the relevant market. *Id.* at 1032. Pinhas was an eye surgeon who alleged the defendants boycotted his attempts to provide patients with lower prices by eliminating the requirement of an assistant during eye surgery. The Court agrees with Plaintiff that injury to competitors may be probative of harm to competition, but in this case Dr. Zoellner did not allege that he was prevented from providing his services at a lower prices or that his resignation was intended to boycott anesthesiologist services from being provided to patients. The alleged facts do not establish a boycott by St. Luke's to find a reduction in competition for the antitrust claim.

Moreover, as stated in the Court's earlier Memorandum Decision and Order, Dr. Zoellner has not alleged that St. Luke's obtained an anti-competitive advantage in the marketplace by forcing his resignation. Dr. Zoellner has failed to allege that

"competition" has been injured, instead he has alleged a "competitor" (Dr. Zoellner) has been injured by the forced resignation and this is not legally sufficient to establish an antitrust claim. *Columbia River People's Util. Dist. v. Portland Gen. Elec.*, 217 F.3d 1187, 1190 (9th Cir. 2000) (citations omitted).

In keeping with the Supreme Court and Ninth Circuit precedents which generally hold that plaintiffs must plead and prove *reduced competition* to make out an antitrust injury, the Court finds Dr. Zoellner's allegations of reduced quality of surgical services do not equate to a reduction in competition. The Court again rejects Dr. Zoellner's argument that he can show antitrust injury by pointing to a decline in quality, with nothing more. Simply put, Dr. Zoellner did not plausibly allege a *market-wide* decline in the quality of services after his forced resignation.

For all these reasons, the Court finds it must dismiss Dr. Zoellner's antitrust claims as he has failed to sufficiently allege a viable economic theory of restraint of trade or commerce under the § 1 of the Sherman Antitrust Act or Idaho Code § 48-104.

### 2. Tort Claims

#### a. Intentional Interference with Contract Claim

St. Luke's moves for the dismissal of the interference with contract claim arguing Plaintiff's employment contract was terminable without cause; Plaintiff has not alleged a breach of his contract; and even if a breach of contract occurred, Plaintiff can show no damages from the breach as he signed an Employment Termination Agreement. Plaintiff

argues St. Luke's actions were wrongful and a breach did in fact occur due to St. Luke's conduct.

In *Wesco Autobody Supply, Inc. v. Ernest*, 243 P.3d 1069, 1083 (Idaho 2010) the Idaho Supreme Court set forth the elements for tortious interference with contract:

> (1) the existence of a contract; (2) knowledge of the contract on the part of the defendant; (3) intentional interference causing a breach of the contract; and (4) injury to the plaintiff resulting from the breach.

For purposes of the motion to dismiss, the Court finds Plaintiff has alleged the existence of an Employment Contract with Anesthesia Associates, Exhibit A to Complaint, Dkt. 1. Plaintiff has also established in its allegations that St. Luke's knew about Dr. Zoellner's contract with Anesthesia Associates. Plaintiff has alleged that St. Luke's intentionally interfered by informing Anesthesia Associates they needed to terminate Dr. Zoellner's relationship. The legal question becomes did the alleged interference cause a breach of the employment contract? Plaintiff maintains that a breach occurred due to the fact his Employment Contract provided under Section 8 that the contract may be terminated by either party upon the giving of ninety (90) days notice by one party to the other. Plaintiff alleges he was told on a Sunday not to come to work on Monday and this did not constitute ninety (90) days notice.

St. Lukes responds because Dr. Zoellner executed a release with Anesthesia Associates, there could not have been a breach. The Plaintiff points out that the release document signed by Dr. Zoellner is not part of the record before the Court. While it is

**MEMORANDUM DECISION AND ORDER - 13**

true the "Employment Termination Agreement" was not attached as an exhibit to the Complaint or Amended Complaint, Dr. Zoellner alleges in paragraph 45 of his Amended Complaint that he entered into such an agreement. For purposes of the motion to dismiss, the Court does not have a copy of the Employment Termination Agreement to consider.

Regardless, the Court finds the issue of whether a breach did or did not occur is not dispositive of the claim since the employment contract at issue was terminable without cause. It is undisputed the express language of Section 8 of the Employment Contract states the agreement was terminable by either party without cause. This Court has previously held that Idaho law does not recognize a claim for tortious interference with contractual relations where plaintiff alleges contractual interference with at-will employees. *See Idaho First Nat'l Bank v. Bliss Valley Foods, Inc.*, 824 P.2d 841, 861 (Idaho 1991). Rather, the proper cause of action is tortious interference with prospective economic advantage. *Id.*

Because the Employment Contract at issue could have been terminated without cause on the part of Anesthesia Associates, the fact that Anesthesia Associates decided to terminate Dr. Zoellner, even if due to St. Luke's alleged interference, does not give rise to a claim for intentional interference with an employment contract and the cause of action must be dismissed as a matter of law.

**b. Intentional Interference with Prospective Economic**

**Advantage Claim**

St. Luke's next argues the intentional interference with prospective economic advantage claim must be dismissed as Plaintiff has not alleged any plausible basis upon which the alleged conduct of St. Luke's was wrongful if the antitrust claims are dismissed. Plaintiff responds that "wrongful" conduct is not limited to antitrust conduct and for purposes of the motion to dismiss this claim survives on the allegations of Plaintiff in the Amended Complaint.

*Westco* also set forth the elements for a claim for interference with prospective economic advantage:

> (1) the existence of a valid economic expectancy; (2) knowledge of the expectancy on the part of the interferer; (3) intentional interference inducing termination of the expectancy; (4) the interference was wrongful by some measure beyond the fact of the interference itself; and (5) resulting damage to the plaintiff whose expectancy has been disrupted.

*Westco* at 1081.

The Court finds for purposes of the motion to dismiss, Plaintiff has established the existence of a valid economic expectancy, the knowledge of such expectancy on the part of St. Luke's, and the alleged intentional interference with Anesthesia Associates leading to the forced resignation of Dr. Zoellner. It is the fourth requirement of the alleged interference being wrongful that is at issue. Plaintiff claims St. Luke's improper motive was independent of his antitrust law claims. Plaintiff claims "[s]acrificing patient care for market share is an improper motive" and this is a factual dispute not suited to resolution

at this stage of the litigation.

Plaintiff must allege interference that "was wrongful by some measure beyond the fact of the interference itself." *Commercial Ventures, Inv. v. Rex M. & Lynn Lea Family Trust*, 177 P.3d 955, 964 (Idaho 2008). "Wrongful means include conduct in violation of: (1) a statute or other regulation; (2) 'a recognized rule of common law, such as violence, threats of intimidation, deceit[,] misrepresentation, bribery, or disparaging falsehood', . . . or (3) 'an established standard of trade or profession.'" *Quality Resource & Service, Inc. v. Idaho Power Co.*, 706 F. Supp. 2d 1088, 1099 (D. Idaho 2010) (internal citations omitted).

St. Luke's maintains even if Plaintiff's allegations are true that he was relieved as Chief of Anesthesiology and St. Luke's requested his termination by Anesthesia Associates because Dr. Zoellner stated his opposition to surgery scheduling practices based on his patient care motives and that St. Luke's wanted to increase its market share of the surgeries completed, this does not meet any of the above definitions of "wrongful" conduct. The Court finds this is a question of fact that cannot be resolved in a motion to dismiss. It is possible as Plaintiff argues that the Idaho Supreme Court did not state an all inclusive list of wrongful conduct, but did set forth examples of what was included in such a definition. The allegations of Plaintiff could possibly be interpreted to meet one of these listed sources or a wrongful source not listed. The Court declines to specify or articulate what that wrongful source is in this case as that is Plaintiff's burden. To

survive a motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 674 (2009) (quoting *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 570 (2007)).  The Court finds at this stage of the litigation that the Amended Complaint arguably alleges a "plausible" basis for wrongful interference by St. Luke's and the motion to dismiss must be denied as to this claim.

The Court acknowledges St. Luke's also argues the claim should be dismissed as it is not a "stranger" to Dr. Zoellner's contract since it named Dr. Zoellner as Chief of Anesthesiology.  The Court finds this argument to be unpersuasive as Plaintiff alleges St. Luke's was not Dr. Zoellner's employer and that St. Lukes was a third party to his contract with Anesthesia Associates.  *See Beco Constr. Co. V. J-U-B Eng'rs, Inc.*, 184 P.3d 844, 849 (Idaho 2008).

### ORDER

**IT IS ORDERED:**

1. Defendant's Motion to Dismiss Plaintiff's Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) (Dkt. No. 29) is **GRANTED IN PART AND DENIED IN PART.** All claims *except* the claim for Intentional Interference with Prospective Economic Advantage are dismissed.

2.  Plaintiff's Motion to Strike Portion of Defendant's Motion to Dismiss Plaintiff's Amended Complaint (Dkt. 35) is **DENIED**.

DATED:  **March 31, 2013**

Honorable Edward J. Lodge
U. S. District Judge

**MEMORANDUM DECISION AND ORDER - 18**